IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| Paul Leslie Emerson, on behalf of G.E. and K.E., | ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiff, |
| vs. |
| Constance Cleveland, Marlene Sorum, and Cynthia Kesler, |
| Defendants. |

Civil No. 3:09-cv-36

**MEMORANDUM OPINION AND ORDER ON MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTIONS TO AMEND PLEADINGS**

Before the Court is Defendant Cynthia Kesler's motion to dismiss (Doc. #69) and Defendants Constance Cleveland and Marlene Sorum's motion for summary judgment (Doc. #87). Plaintiff Paul Emerson has also filed a motion for an extension of time to file motions to amend the pleadings (Doc. #74); a motion to amend the pleadings to add/clarify claims (Doc. #75); and a motion to amend the pleadings to rejoin previously dismissed defendants (Doc. #76). The Court, having carefully considered the briefs filed by the parties, now issues this memorandum opinion and order.

## SUMMARY OF DECISION

The State of North Dakota has not waived Eleventh Amendment immunity from official-capacity damages claims in federal court for alleged violations based on civil rights statutes. Emerson's official capacity claims against Constance Cleveland, assistant state's attorney for Cass County, Marlene Sorum, licensed social worker for Cass County, and Cynthia Kesler, lay guardian ad litem appointed in state court, are to be construed as claims against the state entities for which they are an agent, and are thus barred by the Eleventh Amendment. In addition, the claims fail because Emerson has failed to state a plausible claim for relief.

1

At all times referenced in the complaint, Cynthia Kesler was acting in the scope of employment as a lay guardian ad litem. State officials are entitled to absolute immunity for the performance of duties that are integral parts of the judicial process. Serving as a guardian ad litem is an integral part of the judicial process and thus all claims against Kesler in her individual capacity are barred by the doctrine of absolute immunity. Dornheim v. Sholes, 430 F.3d 919, 925 (8th Cir. 2005).

The claims against Constance Cleveland in her individual capacity occurred while she was carrying out her duties as prosecutor and are thus barred by the doctrine of absolute prosecutorial immunity. Myers v. Morris, 810 F.2d 1437, 1446 (8th Cir. 1987), abrogated on other grounds, Burns v. Reed, 500 U.S. 478 (1991). Any individual capacity claims against Marlene Sorum arising out of her testimony as a witness in the underlying child protection proceedings are barred by absolute witness immunity. Dornheim, 430 F.3d at 925. To the extent Emerson's claims pertain to other conduct by Sorum, Sorum is entitled to qualified immunity because Emerson has failed to present any evidence that his limited constitutional right to parent his children was outweighed by the significant and compelling governmental interest in protecting the children. Lux by Lux v. Hansen, 886 F.2d 1064, 1066-67 (8th Cir. 1989).

Emerson's motions to rejoin previously dismissed defendants, to add or clarify claims, and for an extension of time to file motions to amend pleadings are **DENIED**. After reviewing the additional proposed claims, allowing the requested amendments would be futile.

## BACKGROUND

Plaintiff Paul Emerson is the biological father of two minor children, G.E. and K.E. He alleges that from August 1, 2006 until December 14, 2008, the defendants violated his and the

children's constitutional right of equal protection. During this time period, the children were in the custody of Cass County Social Services. Also, during this time, the state court terminated Emerson's parental rights and then later restored them. Following restoration of his parental rights, Emerson was awarded custody of G.E. and K.E.

Applying a liberal reading to all of the pleadings filed by Emerson, Emerson alleges Constance Cleveland, an assistant Cass County state's attorney, and Marlene Sorum, a licensed social worker for Cass County, acted contrary to state law when they advocated placing the children in shelter care, improperly sought to have Emerson's parental rights terminated, and otherwise interfered with Emerson's parental rights and right to family reunification. He further alleges that Cynthia Kesler, lay guardian ad litem, failed to act in the best interests of the children, prepared a factually inaccurate report, and acted with complicity in interfering with his parental rights during the proceedings to place the children in shelter care and to terminate his parental rights. Defendants seek dismissal of the claims against them on grounds of immunity and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## ANALYSIS

Emerson filed this lawsuit alleging claims under 42 U.S.C. §§ 1983, 1985, and 1986. He contends the defendants violated his and the minor children's constitutional right to equal protection when they failed to comply with state law and/or state agency rules and procedures during the child protection proceedings. Emerson does not allege he or his children are a member of a protected class or that they were treated differently than other similarly situated persons. Rather, after reading all of his pleadings, Emerson's equal protection claim is in the form of an alleged deprivation of his right to parent his children. In light of the inartful pleading and Emerson's possible confusion of

3

legal terms, the Court will analyze Emerson's equal protection claim under the Fourteenth Amendment and in the context of a due process right to parent his children.

### I. Defendant Cynthia Kesler's Motion to Dismiss (Doc. #69)

#### A. Applicable Standard

Rule 8(a)(2), Fed. R. Civ. P., requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This short and plain statement must provide the defendant with fair notice of the plaintiff's claim and the grounds upon which it rests. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008). When determining whether a complaint states a claim, the court should construe the complaint liberally, in the light most favorable to the plaintiff. Eckert, 514 F.3d at 806. A court must accept all factual allegations in the complaint as true, and every reasonable inference is granted in favor of the plaintiff. McAuley v. Fed. Ins. Co., 500 F.3d 784, 787 (8th Cir. 2007); Knieriem v. Group Health Plan, Inc., 434 F.3d 1058, 1060 (8th Cir. 2006).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff's complaint need not contain detailed factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, assuming the factual allegations in the complaint are true, those factual allegations "must be enough to raise a right to relief above the speculative level." Id.; see also Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusion, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555 (citation omitted); see also Eckert, 514 F.3d at 806. A complaint must contain enough facts to "state a claim to relief that is plausible on its face." Aschroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Twombly, 550 U.S. at 570.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949.

Dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. Stringer v. St. James R-1 Sch. Dist., 446 F.3d 799, 802 (8th Cir. 2006). Determining whether a complaint states a plausible claim for relief and therefore survives a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. 1937, 1950.

    B. Emerson's Claims against Cynthia Kesler

Defendant Cynthia Kesler moves to dismiss the claims against her on the grounds the complaint fails to state a claim for relief and even if there was a cognizable claim, she is entitled to absolute immunity. Emerson's first complaint does not specify whether he is suing Kesler in her individual or official capacity. On May 11, 2010, the Court ordered that all pleadings containing the full names of the minor children be sealed (Doc. #53). The Court directed the parties to submit redacted documents, identifying the minor children by initials only. Id.

On May 27, 2010, Emerson submitted for filing another complaint entitled "Initial Complaint." (Doc. #61). The Clerk filed the complaint as a redacted complaint. However, Emerson redacted the children's full name and also amended the complaint to add a sentence in Section III asserting his claims against the defendants are "in both their official and individual capacities." Id. at p. 1. Emerson, by submitting for filing an amended complaint under the guise of a redacted complaint, clearly violated the rules governing amendment of pleadings. However, Kesler did not object to the amendment and in light of the liberal construction courts are to give pro se litigants,

the Court will consider claims against Kesler in both her official and individual capacity.

### 1. Official Capacity Claims

A suit against an individual in her official capacity is actually a suit against the entity for which the official is an agent. Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006). Emerson alleges Kesler is liable for her actions as a guardian ad litem in the underlying state court child protection proceedings. North Dakota Century Code § 27-20-48 provides that, in certain circumstances, a court shall appoint a lay guardian ad litem to represent the interests of a child involved in child deprivation, delinquency, or parental termination proceedings. Emerson's suit against Kesler, who at all times in the complaint was acting in the scope of her appointment as a guardian ad litem, is actually a suit against Cass County, North Dakota. Section 1983 does not abrogate a state's immunity under the Eleventh Amendment. Larson v. Kempker, 414 F.3d 936, 939 n.3 (8th Cir. 2005). Because North Dakota has not waived its immunity, N.D. Cent. Code § 32-12.2-10, Emerson's claims against Kesler in her official capacity fail as a matter of law. Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989).

Moreover, the complaint lacks any material factual allegations against Kesler. Emerson merely indicates the proceedings or events during which Kesler was present (Docs. #3, 61). Emerson does not connect Kesler's presence with any specific cause of action. Kesler's appointment as a guardian ad litem and presence during the child protection proceedings, accepted as true, are insufficient to allow the Court to draw a reasonable inference that she personally deprived Emerson of a constitutional right, or conspired to deprive Emerson of a constitutional right. Thus, even if the Eleventh Amendment did not bar Emerson's official capacity claims against Kesler, the complaint is deficient under Fed. R. Civ. P. 8 and fails to satisfy the plausibility standard set forth by the

United States Supreme Court in Iqbal, 129 S. Ct. at 1949.

Emerson's claims against Kesler in her official capacity are barred by the Eleventh Amendment and are also subject to dismissal for failure to state a cognizable claim upon which relief can be granted. Kesler's motion to dismiss the official capacity claims against her is **GRANTED**.

### 2. Individual Capacity Claims

Absolute immunity is a personal defense available when an official is sued in her individual capacity. Roach v. Stouffer, 560 F.3d 860, 870 (8th Cir. 2009). When considering civil rights claims, state officials are entitled to absolute immunity for the performance of duties that are "integral parts of the judicial process" as long as the judicial function was granted immunity under common law. Dornheim v. Sholes, 430 F.3d 919, 925 (8th Cir. 2005). The Eighth Circuit has determined that a guardian ad litem acting within the scope of employment is entitled to absolute immunity. Id. Thus, Emerson's claims against Kesler are barred by the doctrine of absolute immunity.

In his brief in response to the motion to dismiss, Emerson expands the allegations in his complaint. (Docs. #71, 73). Emerson contends Kesler committed the following wrongful acts: (1) engaging in the unauthorized practice of law by serving as a guardian ad litem when she is not an attorney; (2) failing to act in the best interests of the children while serving as a guardian ad litem; (3) failing to act in good faith and prepared a factually inaccurate report; and (4) failing to take action when Marlene Sorum said "Paul is not an option" and was "complicit in the plan to illegally" terminate Emerson's parental rights and deprive the family of reunification (Doc. #71, Plaintiff's response to motion to dismiss, pp. 1-3). It is impermissible to use a brief in response to a motion

to amend the allegations in a complaint, Morgan Distributing Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989); however, even considering the additional allegations, they are insufficient to survive the motion to dismiss.

Emerson is plainly incorrect in his assertion that a guardian ad litem must be an attorney. North Dakota law allows for the appointment of lay guardian ad litems. N.D. Cent. Code § 27-20-48. All of the remaining allegations asserted against Kesler, including opinions offered during the child protection proceedings and preparation of reports and recommendations to the court, occurred while Kesler was carrying out her role as guardian ad litem within the judicial process. She is thus entitled to absolute immunity. Dornheim, 430 F.3d at 925 (guardian ad litem is immune from civil rights claims under § 1983); Moses v. Parwatikar, 813 F.2d 891, 893 (8th Cir. 1987) (absolute immunity applies to conspiracy claim under 42 U.S.C. § 1985).

To the extent Emerson has attempted to assert a conspiracy claim not protected by the doctrine of absolute immunity, he has failed to state a claim that is plausible on its face. Section 1985 makes it unlawful to conspire to interfere with civil rights, including conspiracies to interfere with the performance of a federal official's duties, conspiracies to interfere with the administration of justice in federal court proceedings, conspiracies to interfere with the administration of justice *with the intent to deny a citizen the equal protection of the laws* in state court proceedings, conspiracies to deprive *a class of persons the equal protections of the laws* or of equal privileges and immunities under the laws, and conspiracies to interfere with the right to support candidates in federal elections. 42 U.S.C. § 1985. While Emerson does not specify the particular conspiracy he believes the defendants engaged in, it appears Emerson has attempted to allege a violation under § 1985(2) - conspiracy to interfere with the administration of justice in state court proceedings and/or

a violation under § 1985(3) - conspiracy to deprive a class of persons the equal protections of the law. Emerson cannot meet the essential elements under either theory.

In order to prove a constitutional conspiracy, Emerson must prove an agreement between the conspirators, which was motivated by a discriminatory animus. Jensen v. Henderson, 315 F.3d 854, 862 (8th Cir.2002). Emerson must point to some facts to suggest the conspirators reached an understanding to violate his rights. Id. Emerson relies on the presence of the defendants together at hearings and joint recommendations regarding the best interests of the children to support his conspiracy claim. These bare allegations are insufficient to establish the defendants reached an understanding to violate his rights.

Even assuming *arguendo* that Emerson's allegations raise a genuine issue of material fact with regard to whether the defendants reached an agreement, in order to establish a prima facie § 1985 claim, Emerson must also show class-based discriminatory animus lay behind the conspirators' actions. Harrison v. Springdale Water & Sewer Com'n, 780 F.2d 1422, 1429 (8th Cir. 1986). Emerson has not alleged, nor has he shown, the defendants' actions were directed at any particular class of people. Rather, Emerson is unhappy with the manner in which he was treated by the defendants in the state court proceedings.

A cognizable "class of one" claim requires evidence that the defendant intentionally treated the plaintiff differently from others similarly situated and that there is no rational basis for the difference in treatment. Gallagher v. Magner, 619 F.3d 823, 839 (8th Cir. 2010). Emerson has failed to proffer any evidence that he was treated differently than others similarly situated and thus has failed to state a plausible § 1985 claim. Emerson's § 1986 claim also fails as a matter of law since recovery under § 1986 is dependent on a valid § 1985 claim. Jensen, 315 F.3d at 863.

Emerson's claims against Kesler in her individual capacity are barred by the doctrine of absolute immunity and are also subject to dismissal for failure to state a cognizable claim upon which relief can be granted. Kesler's motion to dismiss the individual capacity claims against her is **GRANTED**.

## II.     Defendants Constance Cleveland and Marlene Sorum's Summary Judgment Motion (Doc. #87)

### A.     Applicable Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The burden is on the moving party to establish the basis for its motion. Donovan v. Harrah's Md. Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002). Evidence must be viewed in the light most favorable to the nonmoving party, and the nonmoving party enjoys the benefit of all reasonable inferences to be drawn from the facts. See, e.g., Vacca v. Viacom Broad. of Mo., Inc., 875 F.2d 1337, 1339 (8th Cir. 1989). A fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the unresolved issues in a case are primarily legal rather than factual, summary judgment is particularly appropriate. Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1326 (8th Cir. 1995).

### B.     Emerson's Claims against Constance Cleveland and Marlene Sorum

Emerson's first complaint is silent as to the capacity in which he is suing Cleveland and Sorum (Doc. #3). Emerson's "redacted" complaint includes a statement indicating the defendants are sued in both their official capacity and individual capacity (Doc. #61). Defendants Cleveland

10

and Sorum have objected to the additional statement (Doc. #88, memorandum in support of motion for summary judgment, pp. 29-30). Although the unilateral amendment to the complaint violates the procedures set forth in Fed. R. Civ. P. 15, it is unnecessary for the Court to resolve the dispute because all claims alleged against Cleveland and Sorum, whether in their official or individual capacities, fail as a matter of law.

### 1. Official Capacity Claims

Emerson alleges Connie Cleveland and Marlene Sorum violated his and the children's right to equal protection under the Fourteenth Amendment by failing to follow the Interstate Compact on the Placement of Children, the Uniform Custody Jurisdiction and Enforcement Act, and North Dakota law when seeking termination of his parental rights and otherwise depriving him of his right to family reunification. Emerson further alleges Cass County Social Services and the defendants conspired to wrongfully terminate his parental rights and prevent family reunification.

At all times referenced in the complaint, Cleveland was acting in her role as an assistant state's attorney for Cass County, North Dakota. At all times referenced in the complaint, Sorum was employed by Cass County Social Services as a licensed social worker. A suit against an individual in her official capacity is actually a suit against the entity for which the official is an agent. Elder-Keep, 460 F.3d at 986. Thus, this action against Cleveland and Sorum in their official capacities is actually a suit against entities of the State of North Dakota. N.D. Cent. Code Ch. 11-16 (promulgating duties of the state's attorney's offices); N.D. Cent. Code Ch. 50-06 (creating the department of human services).

While § 1983 provides a federal forum to remedy deprivations of civil liberties, it does not provide a federal forum for a litigant who seeks a remedy against a State unless the State has waived

its immunity or Congress has exercised its power to override that immunity. Will, 491 U.S. at 66. The United States Supreme Court has determined that Congress did not intend to override immunities established by a State when it enacted § 1983. Id. at 67. Emerson's claims for money damages against Cleveland and Sorum in their official capacities are thus barred by the Eleventh Amendment. Id.; N. D. Cent. Code § 32-12.2-10 (North Dakota has not waived its immunity under the Eleventh Amendment).

Moreover, in an official-capacity suit under § 1983, a plaintiff must identify a governmental policy or custom that is responsible for the alleged constitutional violation or that the individually named public official possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner. Nix v. Norman, 879 F.2d 429, 433 (8th Cir. 1989) (setting forth elements necessary to state a legally cognizable claim in an official-capacity suit under § 1983). Emerson sets forth numerous factual allegations and then concludes the claims against Cleveland and Sorum "are to be found throughout the documentation of the cases involved and in the Court transcripts, and are solid." (Doc. #61, Complaint p. 4). Nowhere in the original complaint or the redacted complaint does Emerson allege, nor has he shown, the Cass County State's Attorney's Office or Cass County Social Services created, implemented, or enforced an official policy or widespread custom that resulted in a deprivation of his constitutional rights. Further, Emerson has not alleged or presented any evidence to establish Cleveland or Sorum had final authority over the decisions such that they may be liable in a § 1983 action. Monell v. Dept. of Soc. Serv. of the City of New York, 436 U.S. 658, 694 (1978); Nix, 879 F.2d at 433. Consequently, Emerson has failed to articulate a cognizable § 1983 claim against Cleveland or Sorum.

With regard to Emerson's §§ 1985 and 1986 claims against Cleveland and Sorum, they fail

12

for the same reasons identified in this Court's previous Order addressing official capacity claims against Laurie Kramer, Birch Burdick, and Forrest Ammerman (Doc. #41), and in the previous section of this opinion addressing Kesler's motion to dismiss. Like the conspiracy claims alleged against the other defendants, Emerson has failed to present any evidence that Cleveland or Sorum reached an understanding to deprive him of a constitutional right, which was motivated by discriminatory animus. Harrison, 780 F.2d at 1430; City of Omaha Employees Betterment Ass'n v. City of Omaha, 883 F.2d 650, 652 (8th Cir. 1989). Emerson's failure to point to specific that would create a genuine issue of material fact on his conspiracy claims entitles Cleveland and Sorum to summary judgment on those claims.

For the reasons set forth above, Emerson's claims against Cleveland and Sorum in their official capacities are barred by the Eleventh Amendment and also subject to dismissal for failure to state a claim upon which relief can be granted. Cleveland and Sorum's motion for summary judgment as to the official capacity claims against them is **GRANTED**.

2. Individual Capacity Claims

Emerson seeks to sue Cleveland and Sorum in their individual capacities. Liability against a defendant sued in her individual capacity requires a plaintiff to show the defendant was personally responsible for a deprivation of a clearly established constitutional right. Dahl v. Weber, 580 F.3d 730, 733 (8th Cir. 2009). There are, however, immunity defenses available to defendants sued in their individual capacity.

A prosecutor is immune from civil suit for damages under § 1983 when initiating a case and presenting the case in court. Imbler v. Pachtman, 424 U.S. 409, 431 (1976); Myers, 810 F.2d at 1446 (protected prosecutorial function includes instituting the termination of parental rights even

if allegedly without notice to a parent). To determine whether absolute immunity applies, a court is to examine the nature of the function performed. Schenk v. Chavis, 461 F.3d 1043, 1046 (8th Cir. 2006). Prosecutorial functions that are "intimately associated with the judicial process" are entitled to absolute immunity. Id.

Emerson's claims against Cleveland arise from Cleveland's handling of the underlying state court child protection proceedings. The allegations fit squarely within Cleveland's role of assistant state's attorney and are "intimately associated" with the judicial process. Consequently, Emerson's claims against Cleveland in her individual capacity are barred by the doctrine of absolute prosecutorial immunity. McCuen v. Polk County, Iowa, 893 F.2d 172, 174 (8th Cir. 1990) (prosecutor acting within scope of prosecutorial authority in participation of case is absolutely immune from liability for his actions).

Emerson has sued Sorum in her individual capacity as a licensed social worker for Cass County Social Services. Emerson alleges Sorum, like the other defendants, failed to comply with state law and wrongfully deprived him of his parental rights. To the extent Emerson is suing Sorum based on her testimony as a witness in the shelter care hearings or parental termination proceedings, she is entitled to absolute witness immunity. Dornheim, 430 F.3d at 925.

With regard to Emerson's claims that Sorum disregarded the process for the Interstate Compact of the Placement of Children, the Uniform Custody Jurisdiction and Enforcement Act, and other unidentified North Dakota laws, even if true, violations of state laws, state agency regulations, or even state court orders do not automatically state a claim under § 1983. The issue in a § 1983 action is not whether a defendant violated state law or agency policies, but whether he or she violated a clearly established federal or constitutional right. Cole v. Bone, 993 F.2d 1328, 1334 (8th

14

Cir. 1993). While "constitutional significance may attach to certain interests created by state law, not every transgression of state law does double duty as a constitutional violation." Ebmeier v. Stump, 70 F.3d 1012, 1013 (8th Cir. 1995) (quoting Martinez v. Colon, 54 F.3d 980, 989 (1st Cir. 1995)).

A brief summary of the events in the underlying state court proceedings provides guidance to the Court. In 2002, Emerson and Shannon Emerson, k/n/a Shannon Muhle, were divorced in Colorado. Shannon was awarded custody of G.E. and K.E. and resided in Colorado until sometime around 2004 when she relocated with the children to North Dakota. At the time of the divorce, Emerson was in Texas, serving a 30 month prison sentence for stabbing Andrew Muhle in 1999.[1]

In August 2005, the minor children were removed from the home of Shannon and Andrew Muhle and placed in the custody of Cass County Social Services following evidence of sexual abuse. It is undisputed that Emerson's specific whereabouts were unknown at this time as he had not contacted the children since 1999. The State served the petition alleging G.E. and K.E were deprived by publication. Emerson was not located until May 2006. Whether state officials acted diligently in locating Emerson was a contested issue in the underlying child protection proceedings. While Emerson takes issue with the length of time it took to notify him of the proceedings, his claims in this action are limited to the time period from August 2006 to December 14, 2008 (Docs. #3, 61 - Complaint).

Following a trial, Shannon was convicted of abuse and neglect of G.E. and K.E. and gross sexual imposition and sentenced to a total term of imprisonment of 30 years, with five years suspended. Andrew was sentenced to life in prison. When imposing the sentences, the sentencing

---

[1] The original sentence was 54 months and later reduced to 30 months.

judge was quoted as saying the criminal case against Shannon and Andrew Muhle involved incidents "so foreign to the court that the court struggles to make sense of the situation." (Doc. #89-4, p. 83). Likewise, during the child protection proceedings, Sorum considered the children "special needs" because of the abuse. This designation required the children's caregiver to have additional skills. Emerson has not disputed these findings.

Emerson concedes that until he appeared in the underlying state court proceedings, "the proper and correct actions were taken . . . to ensure the safety, well-being, and best interests of G.A.E. and K.D.E." (Doc. #96, Plaintiff's reply brief, p. 1). Upon review of the state court record submitted to this Court, it is clear that during the entire time the children were in Cass County Social Services' custody, they were in an emotionally fragile state and in need of a nurturing environment. It is also clear that social services and the State of North Dakota were concerned about Emerson's ability to parent the "special needs" children based on his violent history and past mental health issues. Shannon's mother also had notified social services that she had a permanent restraining order against Emerson because Emerson had threatened her. While Emerson takes issue with the steps he was required to go through in order to gain custody of the children, the record plainly indicates that Emerson was less than cooperative when asked to provide information or authorization to release information in order to investigate his suitability as a parent.

The Eighth Circuit has made clear that although a parent has a constitutionally protected right in the care and custody of his children, that right must be balanced against the precarious situations child welfare workers confront. Ebmeier, 70 F.3d at 1013. Stated another way, the right to familial integrity is not absolute or unqualified, but rather is limited by the compelling governmental interest in the protection of minor children. Manzano v. South Dakota Dept. of Soc.

Serv., 60 F.3d 505, 511 (8th Cir. 1995).

Qualified immunity protects public officials from liability under § 1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Abdouch v. Burger, 426 F.3d 982, 987 (8th Cir. 2005). Officials do not lose qualified immunity simply because their conduct violates some statutory or administrative provision. Davis v. Scherer, 468 U.S. 183, 194 (1984). On the record before the Court, even if it was true that Sorum violated a statutory or administrative provision, Emerson has not shown that a reasonable social worker would have known the conduct violated a clearly established statutory or constitutional right.

Emerson has failed to demonstrate his limited constitutional right to parent his children was outweighed by the significant and compelling governmental interest in protecting the children. The Court recognizes that Emerson's parental rights were disrupted while the child protection proceedings were ongoing; however, Emerson has failed to establish the disruption was caused by the unreasonable or unconstitutional actions of Sorum. Even if the underlying state court proceedings were not handled perfectly, Emerson has failed to come forward with evidence to raise a genuine issue of material fact as to any action by Sorum (or any other defendant) which, if proven, would constitute a violation of a clearly established constitutional right. Sorum is thus entitled to qualified immunity. Lux by Lux v. Hansen, 886 F.2d 1064, 1066-67 (8th Cir. 1989) (social worker entitled to qualified immunity for child's claim that she was improperly separated from her father as a result of social service's investigation and subsequent dependency and neglect proceedings).

For the reasons set forth above, Emerson's claims against Cleveland in her individual capacity are barred by the doctrine of absolute prosecutorial immunity. The claims against Sorum in her individual capacity are likewise barred by the doctrine of absolute witness immunity and/or

qualified immunity. Cleveland and Sorum's motion for summary judgment as to the individual capacity claims against them is **GRANTED**.

### III. Emerson's Motion for an Extension of Time to File Motions to Amend Pleadings (Doc. #74) and Motions to Amend Pleadings (Docs. #75, 76)

Emerson seeks to amend the pleadings to rejoin previously dismissed defendants and to add and "clarify" claims. Emerson has presented no legitimate basis for this Court to, once again, reconsider its Order dismissing Defendants Birch Burdick, Forrest Ammerman, and Laurie Kramer. His motion to rejoin defendants (Doc. #76) is **DENIED**.

Once the plaintiff files a complaint and the defendant files a response to the complaint, the plaintiff may amend its pleading only by leave of court or with the defendant's consent. Fed. R. Civ. P. 15(a). The district court can refuse to grant leave to amend a complaint where it will result in "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). Whether to grant or deny the motion to amend is within the discretion of the district court. Id.

The Court has reviewed the proposed additional claims and has grave doubts that any are cognizable as a matter of law. Furthermore, even assuming the additional claims might be cognizable, Emerson has failed to articulate why the new claims would not also be barred by sovereign immunity, absolute immunity, and/or qualified immunity. Granting leave to amend the complaint would be futile. Emerson's motion to amend his pleadings (Doc. #75) is **DENIED**, as is his corresponding motion for additional time to amend the pleadings (Doc. #74).

## DECISION

Emerson's claims against Kesler, Cleveland, and Sorum in their official capacities are claims against state entities, which are barred by the Eleventh Amendment. Furthermore, Emerson's claims consist of nothing more than conclusory allegations. Even giving the most liberal interpretation to the pleadings, the claims are subject to dismissal for failure to state a plausible claim.

Additionally, all claims against Kesler in her individual capacity occurred during the course of her appointment as guardian ad litem and are barred by the doctrine of absolute immunity. Similarly, the individual capacity claims against Cleveland are barred by absolute prosecutorial immunity. Finally, Emerson's claims against Sorum are barred by absolute witness immunity or qualified immunity. For these reasons, Kesler's motion to dismiss is **GRANTED**, and Cleveland and Sorum's motion for summary judgment is **GRANTED**.

Finally, because Emerson has failed to demonstrate a legitimate reason to rejoin the previously dismissed defendants, his motion is **DENIED**. Additionally, Emerson's motion to amend the pleadings to add/clarify claims is **DENIED** because the additional proposed claims would be subject to dismissal for the same reasons stated in this opinion. Additionally, Emerson's corresponding motion for an extension of time to amend his pleadings is **DENIED**.

The claims barred by Eleventh Amendment sovereign immunity are dismissed without prejudice. The remaining claims are dismissed with prejudice

**IT IS SO ORDERED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 22nd day of March, 2011.

> */s/   Ralph R. Erickson*
> Ralph R. Erickson, Chief Judge
> United States District Court